IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**EILEEN ORTIZ,**

      Plaintiff,

vs.                                             Civ. No. 00-1452 JP/DJS

**LARRY G. MASSANARI, Acting Commissioner of Social Security,**[1]

      Defendant.

### MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[2]

1.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding the matter for a rehearing. The Court will review the Commissioner's

---

[1] Pursuant to Fed.R.Civ.P. 25, Larry G. Massanari, Acting Commissioner of Social Security is substituted for William A. Halter, Acting Commissioner, as the Defendant in this action. Mr. Massanari was designated by President Bush on March 29, 2001.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings.  Williams v. Bowen, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.    Plaintiff applied for supplemental security income benefits on November 12, 1996.  Tr. 62-65.  Her application was denied initially and on reconsideration.  The Appeals Council denied her request for review.  Tr. 6-7.  The decision of the Administrative Law Judge (ALJ) therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.    Ms. Padilla was born on October 11, 1969 and was 29 years old on the date of the ALJ's decision.  She was a "younger person" during the relevant time frame.  Tr. 25 and 62.  She has a twelfth grade education and three years of college.  Tr. 25 and 90.  Her past relevant work includes work as a machinist, a mapper and a waitress/cashier.  Plaintiff alleges she is disabled due to back pain, anxiety disorder and major depression.  Tr. 51 and 73.

**Issues**

4.    Plaintiff alleges the ALJ made four errors. Specifically Plaintiff claims that: (1) the ALJ erred in applying the grids conclusively; (2) the AL did not adequately develop the record; (3) the ALJ improperly based his decision on Plaintiff's lack of medical

2

compliance; and (4) the ALJ failed to give sufficient weight to the treating physician's opinion.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific

3

types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

    7.   To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

    8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt.

P, App. 2. These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere

presence of nonexertional impairments does not automatically preclude reliance on the grids.  Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

    10.  Pursuant to the social security regulations, if a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight.  20 C.F.R. 404.1527(d)(2); see also Social Security Ruling (SSR) 96-2p.  The AL must give "specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995).

    11.  Dr. Edward E. Gilmour, Plaintiff's treating psychiatrist, testified at the hearing.  Tr. 303-11.  He testified that he had treated the Plaintiff for almost two years.  Tr. 303.  He saw her on a regular basis ranging from once a month to sometimes once every two months.  Id.  At the time of the hearing Plaintiff was taking several psychotherapeutic drugs.  Dr. Gilmour prescribed 60 milligrams of Paxil.  This is higher than the recommended dose.  Id. Paxil is used to treat depression.  Physicians' Desk Reference, 54th Ed., 2000, p. 3027.  He also prescribed Depakote which is indicated for treatment associated with bipolar disorder and Diazapan which

is given for the management of anxiety disorders.  Id. at 433, 2597. He testified that the medications helped the Plaintiff and that she had no side effects from these medications.  When the ALJ asked him regarding his functional abilities to work, Dr. Gilmour testified that for the most part her functioning level from poor to fair.  It is somewhat unclear from the record how Dr. Gilmour defined fair. Tr. 310-11.  The ALJ discredited this opinion because it was inconsistent with Dr. Gilmour's previous treatment notes.  Tr. 24. This is not supported by the evidence in the record.

    12.  Plaintiff first saw Dr. Gilmour on June 19, 1997.  He diagnosed her with severe ongoing depression and anxiety, longstanding. Tr. 211.  He prescribed psychotherapeutic drugs.  Tr. 212.  At her next visit, Dr. Gilmour noted that she was "definitely improved-less anxiety." Tr. 210.  However, this note and further progress notes indicate that Plaintiff's mental impairment did limit her ability to function.  In the following visit on July 23, 1997, Dr. Gilmour notes she is better but has anger, anxiety, nightmares and night sweats.  Id.  The following month he notes she has "tremendous stress." Tr. 209. He diagnoses her as "[p]hobic." Tr. 208.  In April of 1998, Dr. Gilmour notes that Plaintiff is depressed and is "flat."  Tr. 262.  She was still having night sweats.

    13.  Further, noted throughout Dr. Gilmour's progress notes are issues in Plaintiff's family which affected her mental health. The ALJ wrote that these notes indicated some family conflict,

"which apparently resolved." Tr. 17. The notes show otherwise. She has had problems with her husband and her losses are stated throughout the notes. Tr. 263. Her aunt, who raised the Plaintiff, died in December of 1997. Her brother committed suicide while in jail. She was a teen-age alcoholic. Tr. 223. She was abused by her brother, her aunt's husband and her daughter's father. Tr. 224. Further, Dr. Gilmour testified that the problems Plaintiff had with her relationship with her sister were ongoing. Tr. 312. The Plaintiff testified as to her on-going problems with her sister. Tr. 301. There is simply no support in the record that Plaintiff's family conflicts were resolved.

    14. Dr. John R. Evaldson performed an consultative evaluation on April 4, 1997. He diagnosed the Plaintiff with "[m]ajor depression, severe with psychotic features, recurrent, post-traumatic stress disorder, history of alcohol dependance in remission." Tr. 226. He determined that Plaintiff Global Assessment of Functioning (GAF) was 40. GAF is a scale used to report "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32 (4th ed. 2000). A GAF of 40 is defined as "[s]ome impairment in reality testing or communication [or] major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." <u>Id</u>. at 34.

    His impression was that:

    Ms. Ortiz has a lifelong depression that interferes with her

>    capacity to function at school, in the workplace, in her role
>    as a parent and as a wife...It appears that her mood problems,
>    even on the medicine, are significant and interfered with her
>    capacity to cope with the situation in her prior job...

Id.

Clearly, Plaintiff's treating physician and the Commissioner's consultative physician are in agreement.

   15.   The ALJ used the grids as a framework.  He specifically found that plaintiff's mental condition is controlled by medication. Tr. 25.  He further found that Plaintiff was non-compliant with recommended treatment for her mental condition.  These findings are not supported by the substantial evidence in the record.  Rather the records indicate a continued and severe mental impairment.

   16.   The ALJ's error requires a remand.  As the remand will require the Commissioner to conduct the sequential evaluation, it is not necessary to address Plaintiff's remaining arguments.  The Court notes, however, that Plaintiff mental condition must be considered in making credibility findings.  Montgomery v. Shalala, 30 F.3d 98, 100 ( 8th Cir. 1994).  Further, the ALJ may not rely on or use the grids as a framework when the record supports a finding that Plaintiff has a nonexertional limitations such as a mental impairment.  Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991).

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to Remand be granted for proceedings consistent with the proposed findings.

_____
**Don J. Svet**
**United States Magistrate Judge**